W. D. Donaldson, *et ux.,* v. H. D. Stokes, *et ux.,* Frank
G. Churchill, L. R. Hampton, *et ux.*

174 So. 459.
Division A.
Opinion Filed April 22, 1937.
Petition for Rehearing Denied June 2, 1937.

*Frank R. Greene,* for Appellants;

*W. E. Smith* and *A. P. Buie,* for Appellees.

Buford, J.—The appeal is from an order denying motion
to strike two sentences contained in different paragraphs of

defendants' answer, being that portion of paragraph number 8 of said answer reading as follows:

"And say that the defendant's Stokes mortgage was foreclosed in said suit," and that portion of paragraph number 10 of the answer reading as follows:

"But, on the contrary, the defendants say that the said Stokes took said deed as absolute conveyance of the record title to him as the owner thereof."

Section 8 of the answer is as follows:

"8. Answering the 8th paragraph of said bill of complaint, defendants say that they admit the facts set forth therein, but deny the legal conclusions drawn therefrom, and say that the defendant's, Stokes', mortgage was foreclosed in said suit, and say that both plaintiffs were duly served with process of court in said suit, and aver that the court has jurisdiction of the subject matter, and of the parties, and that a decree was entered in said suit, foreclosing the plaintiff's right to redeem from said tax certificate, and aver at that time that the plaintiffs' interest in said lot was not worth the amount of the debt existing against the same, which was well known to the plaintiffs; that at that time there existed a debt against the undivided one-half interest of the plaintiffs, in and to said lot, of two hundred twenty-six and 17/100 ($226.17) dollars for City of Ocala taxes; three hundred ninety-four and 17/100 ($394.17) dollars for State and County taxes; four hundred sixteen and 52/100 ($416.52) dollars for street paving liens, and a mortgage indebtedness due defendant H. D. Stokes of nine hundred ninety-nine and 17/100 ($999.17) dollars, making a total indebtedness against plaintiff Donaldson's interest of two thousand thirty-six and 4/100 ($2,036.04) dollars, and these defendants aver that their interest in said lot at that time was not of that value, and that no one knew this

better than the plaintiffs, Donaldsons, and these defendants aver that it was for this reason and none other, that the plaintiffs, Donaldsons, failed and refused to redeem their interest in said lot from said foreclosure sale."

Section 10 is as follows:

"10. Answering the 10th paragraph of said bill of complaint, defendant, H. D. Stokes, admits that the plaintiffs own and reside upon the land contiguous to the land involved in this suit, but deny that the plaintiffs have, since the 4th day of November, 1931, occupied, used and cultivated any portion of the lot involved in this suit, and say that if the plaintiff did use any portion of the same, that such use was surreptitious and without any claim of right, and without right, and defendant, Stokes, denies that he was recognized any rights into said lot in plaintiffs since the 4th day of November, 1931, and admit that they have not paid the taxes but deny that they have allowed said lots to lie idle, and deny that the plaintiffs had anything to do with the filling in said lot or in renting the same to Camp-MacKay Motor Co., but say that the Camp-MacKay Motor Company has used and occupied said lot solely under authority granted it by defendant, H. D. Stokes.

"These defendants, further answering said paragraph, state that all the while from the time the defendant, H. D. Stokes, took said mortgages out of the Ocala National Bank up until the announcement of the construction of the Atlantic-Gulf Ship Canal across the State of Florida, to pass a few miles South of Ocala, that he thought he had more invested in said lot than he would ever get out of it, and from the 4th day of November, 1931, up until the announcement of the construction of the said ship canal he has tried to sell said lot for enough to get his money out of it, and while defendant Stokes has no recollection of talking to

plaintiff Donaldson about the matter from November 4, 1931, up until the announcement of the construction of said canal, it may be, and in fact he would have told Donaldson that if he could get his money out of the lot he would sell it to him or any other purchaser, but denies that they recognized Donaldson as having any interest in said lot or any right to redeem from the tax foreclosure sale or said mortgage indebtedness, and these defendants deny that defendant Stokes took the conveyance to him by the Special Master as security for said debt, but on the contrary, defendants say that the said Stokes took said deed as absolute conveyance of the record title to him as the owner thereof, and deny that they have ever, in any way, done or said anything that could be construed by the plaintiffs, Donaldsons, that they had a right to redeem from said debt, and deny that the plaintiffs or either of them have ever offered to redeem or pay off said debt, except as hereinafter related, and deny that the plaintiffs or either of them have, since the 4th day of November, 1931, been ready, able and willing to pay the amount of said tax lien and mortgage debt, and deny that they ever offered to pay the same, except as hereinafter related."

The amended bill of complaint to which the answer was filed alleges in substance that on the 1st day of January, 1926, the plaintiffs and the defendants, L. R. Hampton and Effie C. Hampton, his wife, were the owners as tenants in common of a certain described lot in Ocala, Marion County, Florida; that the plaintiff, Mattie J. Donaldson, and the defendant, Effie C. Hampton, were each the owners by inheritance from their mother, Susie Mitchell, of an undivided one-fifth interest in said lands and that the plaintiff, W. D. Donaldson, was the owner of an undivided one-fifth interest in said lands by purchase and conveyance from Ruby

McCant, another daughter of Susie Mitchell; that L. R. Hampton was the owner of an undivided one-fifth interest in said land by purchase and conveyance from R. S. Hall and wife, who had purchased said one-fifth interest from R. S. Mitchell, widower of Susie Mitchell, deceased; that W. D. Donaldson and L. R. Hampton were then also each owners of an undivided one-tenth interest in said lands by purchase and conveyance from Willie Butterfield, a daughter of Susie Mitchell, that at all times since December 31, 1930, the plaintiffs and the defendants, Hampton, have been and now are the owners of the lands in respective portions or undivided interests as above set forth and co-tenants therein and that all this had at all times been well known to the defendant Stokes; that on the 5th day of April, 1926, the plaintiffs had borrowed $150.00 from Ocala National Bank and given their note therefor, securing the same by a mortgage on their aggregate undivided one-half interest in said land. And thereafter the plaintiffs borrowed $2,669.00 from Ocala National Bank, giving their mortgage to secure the same on their aggregate undivided one-half interest in said land, which said mortgage was dated September 1, 1927; that plaintiffs thereafter made payments on the said mortgage indebtedness represented by their notes aforesaid, reducing the principal indebtedness until the same with interest to December 31, 1930, amounted in all to not more than $999.17 secured by the two mortgages aforesaid; that on December 31, 1930, the defendant Stokes, then Cashier of the Ocala National Bank, became owner of the two mortgages by assignment from Ocala National Bank. That the State and County taxes assessed against the lands were in default for several years, the lands having been sold for taxes on July 4, 1927, and knocked off to the Treasurer of the State of Florida for $130.69, which sale was evidenced

by tax sale certificate No. 5719 of the year 1927; that in the month of March, 1931, that tax sale certificate was still outstanding in the hands of the Treasurer of the State of Florida; that after the purchase of plaintiff's mortgage H: D. Stokes entered into a secret understanding and agreement with defendant Hampton, a co-tenant of plaintiffs, for the purchase of the said tax sale certificate in the name of the defendant Frank G. Churchill as their agent for the purpose of preventing said certificate from falling into the hands of strangers at a greatly reduced price at the auction sale of the tax certificates authorized by law then in force and which sales were being conducted at that time, and also for the purpose of gaining the benefit of the reduction of the amount of taxes by that procedure.

That pursuant to such agreement and with funds furnished one-half by Stokes and one-half by Hampton, Churchill purchased a tax sale certificate and received an assignment thereof which included subsequent and omitted taxes for the years 1927, 1928, 1929 and 1930, all of which aggregated the sum of $788.35, but that Stokes and Hampton, through Churchill, paid for said tax certificate including subsequent and omitted taxes aforesaid, $311.25, one-half of which was contributed by each of the defendants, Stokes and Hampton, and the said defendant, Churchill, took and thereafter held said tax certificate as agent and trustee for the said defendants, who as tenant in common with plaintiffs and as mortgagee of the plaintiffs respectively, acting jointly and in concert, were also in fact and in law the agents and trustees of the plaintiffs and the defendant Effie C. Hampton in respect to the purchase, ownerships, and subsequent disposition of said tax sale certificate.

That as co-tenant L. R. Hampton was under an obligation to pay the taxes represented by tax certificate and subse-

quent and omitted taxes equal to and identical with the obligation of plaintiffs to pay the same, all of which was then known to Stokes. That the defendant, Stokes, was entitled as of right under plaintiffs' mortgages purchased by him and assigned to him to purchase or redeem the tax certificate, including subsequent and omitted taxes aforesaid for the purpose of protecting his equity upon the undivided one-half interest of the plaintiffs in the aforesaid lands. That in fact and in law the purchase of the tax certificates and subsequent and omitted taxes by the defendants, Stokes and Hampton, acting jointly and in concert in the name of Churchill, was made for the common benefit of plaintiffs and defendants, L. R. Hampton and wife, Effie C. Hampton, as owners of the lands in co-tenancy and for the protection and benefit of Stokes as assignee of the mortgage of plaintiffs' undivided one-half interest in the lands and, as to the plaintiffs constituted a payment of said taxes for which the plaintiffs are accountable by way of contribution as mortgagors and co-tenants.

That thereafter defendants Stokes and L. R. Hampton caused their aforesaid agent and trustee, Frank G. Churchill, to file a suit in the Circuit Court in the Fifth Judicial Circuit of Florida in Chancery wherein Chuchill was named as complainant, although he had no actual interest in the subject matter, and the plaintiffs herein with L. R. Hampton and his wife, Effie C. Hampton, H. D. Stokes and others were named as defendants, for the foreclosure of the aforesaid tax certificate against the above described lands, wherein they demanded of the plaintiffs payment of the full sum of $788.35 and interest, being the face amount of the tax certificate and subsequent and omitted taxes plus interest from March 31, 1931, plus costs and attorneys' fees.

That in said suit it was pretended by the defendants

Stokes and Hampton that Churchill was the real owner of the tax certificate aforesaid and the real party at interest in the said suit and that they, the said defendants, were strangers to the transaction and were *bona fide* defendants in said suit whose interests were adverse to those of the plaintiff, whereas in fact Churchill, the plaintiff, was their agent and representative in all matters pertaining to said certificate and the foreclosure thereof. That the defendant Stokes as defendant in the foreclosure suit filed an answer setting up his mortgage as an inferior lien against the premises to the extent of the undivided one-half interest described therein. That the plaintiffs in this suit, defendants in the foreclosure suit, had no knowledge of the facts above set forth including the dealings and agreements and transactions between the defendants, L. R. Hampton, Stokes and Churchill, but supposed and believed until after the completion of the foreclosure suit that Churchill in purchasing the tax sale certificate and in foreclosing the same was acting for himself and not as agent or representative for the defendants Stokes and Hampton. That on September 19, 1931, final decree was entered therein and recorded, decreeing the sale of the premises to pay the sum of $478.81 adjudged to be due upon aforesaid tax sale certificate and upon sale being made under the final decree H. D. Stokes paid the sum of $375.00 for the lands, although the lands were of large value, to-wit, the value of several thousand dollars, as the defendants, Stokes and Hampton, well knew, and upon confirmation of said sale the premises were conveyed by the Master to Stokes on the 4th day of November, 1931.

That the costs of the suit and attorneys' fees for the complainant's solicitor therein were paid by Special Master and the balance amounting to $274.65 was paid to Churchill,

but the plaintiff received the same as agent and trustee for Stokes and Hampton and forthwith paid over the said money to the said defendants.

Section 10 of the amended bill of complaint is as follows:

"10. That at the time of such sale and conveyance to the defendant, H. D. Stokes, the plaintiffs herein, as said Stokes and the defendants Hampton well knew, owned and resided upon lands contiguous to the lands hereinabove described, as the East 90 feet of Lot 4, Block 48, Old Survey of Ocala, and were then occupying, using and cultivating and have ever since been and now are occupying, using and cultivating portions of said lands for purposes of husbandry, as each of the defendants at all times well knew. That the said residence property of plaintiff has never been and is not now separated from the land first hereinabove described by any fence, or other visible boundary, and neither the said defendant Stokes and the defendants Hampton, nor any of them, have ever taken possession of said lands or occupied the same, to the exclusion of or in hostility to the plaintiffs, or exercised or claimed any right of ownership or possession thereof adverse to the interest of the plaintiffs as co-tenants therein, but have always recognized and admitted plaintiffs' title and possession as co-tenants therein, until very recently. That said defendants have paid no taxes on said lands since the conveyance to H. D. Stokes aforesaid and have simply allowed the said lands to lie idle, except for the cultivation thereof by the plaintiffs, until about a year ago. That about a year ago the Camp-MacKay Company informed the plaintiffs that they were willing to fill in the portion of said lands first above described, fronting on Magnolia Street, Ocala, Florida, in exchange for the free use of the filled-in portion for parking used cars, and stated

that H. D. Stokes had given his consent and requested plaintiffs' consent, which was given. That a quantity of rubbish was being deposited on said lot for filling in the same with the knowledge and consent of the defendant Stokes, which was undesirable for that purpose, and the plaintiffs, as owners in co-tenancy forbade and stopped the same. That all of the defendants have at all times recognized and admitted the right to and the actual possession and use of said lands by the plaintiffs as tenants in common with them, and acquiesced in their use by plaintiffs as such co-tenants, for cultivation and husbandry as aforesaid, and the defendants Hampton still, as always, recognize and admit that the plaintiffs severally are the owners of an undivided interest as tenants in common with them, subject to the lien of said H. D. Stokes and L. R. Hampton for contribution by plaintiffs for their several pro rata shares of the cost of the tax certificate and foreclosure expense aforesaid, and until shortly before the commencement of this suit the said H. D. Stokes recognized plaintiffs' aforesaid interest and offered to convey to them the record title to their respective undivided interests upon payment by them of the cost of said tax certificate and foreclosure suit, plus the amount claimed by him to be due him upon the aforesaid mortgages, though he always refused to permit plaintiffs to redeem their interests by payment of their share of the cost of the tax certificate and foreclosure suit aforesaid, without paying said mortgages. That in fact the said H. D. Stokes took said conveyance to him by the Special Master of the lands aforesaid and has ever since until just before the commencement of said suit held the record title to said lands thereunder not as owner, but as security for the payment of the aforesaid mortgage indebtedness of the plaintiffs, in addition to the cost of said tax certificate and foreclosure suit,

and so informed the plaintiffs, and they were never advised until a week or two before the commencement of this suit that he held or claimed to hold the record title aforesaid for any purpose or in any manner except as such security, and believed and relied upon that information from said defendant as well as upon the other facts and circumstances herein set forth, at all times after the aforesaid conveyance of the record title to said defendant, until just prior to the commencement of this suit, in making arrangements to redeem their interest in said property. That only a few weeks before the commencement of this suit plaintiffs approached the defendant Stokes and offered to pay their share of the cost of said tax certificate and foreclosure suit, with interest, and said mortgage debt and interest, and at first the said Stokes indicated that he would accept the same, but later on stated that he had changed his mind and was going to claim absolute title to said lands."

Section 11 of the amended bill of complaint is as follows:

"That the plaintiffs are ready, able and willing, and prior to the filing of this suit offered to pay and hereby offer to pay to the defendants H. D. Stokes and L. R. Hampton, all sums of money justly and lawfully due them severally by reason of or in connection with their purchase and foreclosure of the tax sale certificate aforesaid, and to the defendant H. D. Stokes such sums of money as upon an accounting shall be found to be due him as the owner and holder of the aforesaid mortgage of the plaintiffs and the notes secured thereby, which the defendant Stokes still holds and asserts as unpaid and outstanding obligations, of the plaintiffs, secured by the lands first above described, and the plaintiffs are further ready, able and willing, and hereby offer to carry out, make and perform such further payments, conditions and requirements as to the Court may seem equi-

table and just under all the circumstances for the redemption by the plaintiffs of their aforesaid interest in said lands, but said defendants Stokes have refused and still refuse to permit the plaintiffs to redeem said lands as aforesaid."

It has been necessary to detail the alleged facts so as to show the relevancy of the portions of the answer which the Chancellor declined to strike.

This allegation is relevant because if the other contentions made by Stokes are to be determined it will be proper for the Court at the same time to determine whether or not as a matter of law the Stokes mortgage was foreclosed in the suit instituted and prosecuted for the purpose of foreclosing the tax certificates. If the allegations of the bill of complaint are true Stokes did not foreclose his mortgage because the tax certificates were never subject to foreclosure and by the fraudulent foreclosure proceedings the parties, Stokes and L. R. Hampton, cannot change their position or status with reference to the other defendants in that suit. In other words, if they by collusion purchased the tax certificates in the name of a third party or had a third party to purchase the certificates with their money and as their agent the tax certificates were purchased and held in trust for the benefit of the co-tenants and they can only require of and from them their proportionate contributions of the actual cost of the certificates, including subsequent and omitted taxes. A foreclosure of the tax sale certificate under such conditions when the record shows that the lands were bought in by Stokes resulted only in causing Stokes to hold the title as trustee for the co-tenants subject to redemption on the payment of the amount paid by Stokes and L. R. Hampton for the tax certificate and subsequent and omitted taxes and Stokes still holds his

mortgage subject to redemption by the mortgagors, or those entitled to redeem in their stead.

The sentence contained in paragraph 10 of the answer which the court refused to strike, wherein it is averred that Stokes "took said deed as absolute conveyance of record title to him as the owner thereof," referring to the Master's deed to Stokes, is material because the question is, "did Stokes take the Master's deed as trustee for himself and the co-tenants, or did he take it conveying an absolute title in himself?" This question must be determined when the matter comes on for disposition on the merits.

For the reasons stated, the order appealed from is affirmed.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.

## ON REHEARING.

PER CURIAM.—This case is before us on petition for rehearing. The petition for rehearing is denied, but on authority of Crichlow, *et ux.*, v. Maryland Casualty Co., 103 Fla. 267, 268, 137 Sou. 276, the judgment of affirmance by this Court is hereby amended to read:

The order appealed from is affirmed with leave to the Appellants in the court below to apply to the Circuit Court for an order fixing a reasonable time within which to take testimony as to the issues made and thereafter to proceed with the case to final hearing on the pleadings and testimony so taken, as if no steps in the cause had been taken in the Circuit Court pending the appeal in the Supreme Court.

It is so ordered.

ELLIS, C. J., and TEFRELL and BUFORD, J. J., concur.

BROWN and DAVIS, J. J., concur in the opinion and judgment.